UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

NORMA GRUBB,

        Plaintiff,

v.                                       Case No:  2:15-cv-503-FtM-CM

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

---

## OPINION AND ORDER

Plaintiff Norma Grubb seeks judicial review of the denial of her claim for Social Security disability insurance benefits ("DIB") by the Commissioner of the Social Security Administration ("Commissioner").   The Court has reviewed the record, the briefs and the applicable law.   For the reasons discussed herein, the decision of the Commissioner is **AFFIRMED**.

### I.   Issues on Appeal[1]

Plaintiff raises three overarching issues on appeal: (1) whether substantial evidence supports the Administrative Law Judge's ("ALJ") determination that Plaintiff's mental impairment of bipolar disorder is non-severe; (2) whether the ALJ properly weighed the medical opinions in determining Plaintiff's RFC; and (3)

---

[1] Any issue not raised by Plaintiff on appeal is deemed to be waived. *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed."), *cited in Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 n.1 (11th Cir. 2013).

whether the ALJ was required to obtain testimony of a vocational expert ("VE"). Because the decision of the Commissioner is supported by substantial evidence, and the Plaintiff has not shown any reversible error, the decision will be affirmed.

## II.   Procedural History and Summary of the ALJ's Decision

On May 3, 2011, Plaintiff filed her application for DIB, alleging she became disabled on February 12, 2011.   Tr. 99-102, 125.   Plaintiff alleged disability due to mental impairments, specifically a nervous breakdown and bipolar disorder.   Tr. 129.   The claim was denied initially and upon reconsideration.   Tr. 61-65, 68-72. Plaintiff requested and received a hearing before ALJ Larry J. Butler on May 30, 2013, during which she was represented by an attorney.   Tr. 27-55, 74-75.   The ALJ issued an unfavorable decision on March 18, 2014.   Tr. 12-26.   The Appeals Council denied Plaintiff's request for review.   Tr. 1-7.   Accordingly, the ALJ's decision is the final decision of the Commissioner.   Plaintiff filed an appeal in this Court on August 20, 2015.   Doc. 1.   Both parties have consented to the jurisdiction of the United States Magistrate Judge, and this matter is now ripe for review.   Docs. 11.

In his decision, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2015.   Tr. 14.   At step one, the ALJ concluded that Plaintiff has not engaged in substantial gainful activity since February 12, 2011, the alleged onset date.   *Id.*   At step two, the ALJ found that Plaintiff "has the following severe impairments: hyperthyroidism and a hiatal hernia."   *Id.*   At step three, extensively addressing Plaintiff's alleged mental impairment, treatment and other records, the ALJ concluded that Plaintiff "does not

have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 . . . ."  Tr. 14-18.

After stating he carefully considered the entire record, the ALJ determined that Plaintiff had the RFC to perform a full range of medium work, as it is defined in 20 C.F.R. § 404.1567(c).[2]  Thus, the ALJ found Plaintiff able to perform her past relevant work as an x-ray technician, which requires light exertion and is skilled with an SVP[3] of 7.  Tr. 20.  Alternatively, the ALJ determined that Rule 203.2 of the Medical-Vocational Guidelines (the "guidelines" or "grids") supports a finding that Plaintiff is not disabled.  Tr. 21; *see* 20 C.F.R. pt. 404, subpt. P, app. 2.  The ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  Tr. 21.  The ALJ determined that a vocational expert was not required, and that Plaintiff can perform the full range of medium work.  *Id.*

### III.   Social Security Act Eligibility and Standard of Review

---

[2] The regulations define "medium work" as follows:  "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c).

[3] "The [Dictionary of Occupational Titles ("]DOT["]] lists a specific vocational preparation (SVP) time for each described occupation. Using the skill level definitions in 20 CFR 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT." SSR 00–4p, 2000 WL 1898704 at *3.

A claimant is entitled to disability benefits when she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months.   42 U.S.C. 423(d)(1)(A); 20 C.F.R. § 404.1505(a).   The Commissioner has established a five-step sequential analysis for evaluating a claim of disability.   *See* 20 C.F.R. § 404.1520; 416.920.   The Eleventh Circuit has summarized the five steps as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).   The claimant bears the burden of persuasion through step four, and, at step five, the burden shifts to the Commissioner.   *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).   The Eleventh Circuit has noted that the Commissioner's burden at step five is temporary, because "[i]f the Commissioner presents evidence that other work exists in significant numbers in the national economy, 'to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists.'"   *Atha*, 616 F. App'x at 933 (citing *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001)).

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by

substantial evidence. *Crawford v. Comm'r of Soc. Sec.,* 363 F.3d 1155, 1158 (11th Cir. 2004). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla, *i.e.,* evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v. Chater,* 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted); *see also Dyer v. Barnhart,* 395 F.3d 1206, 1210 (11th Cir. 2005) (finding that "[s]ubstantial evidence is something more than a mere scintilla, but less than a preponderance") (internal citation omitted). "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." *Foote,* 67 F.3d at 1560; *see also Lowery v. Sullivan,* 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings).

The Eleventh Circuit recently has restated that "[i]n determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings." *Hunter v. Soc. Sec. Admin., Comm'r,* 808 F.3d 818, 822 (11th Cir. 2015) (citing *Black Diamond Coal Min. Co. v. Dir., OWCP,* 95 F.3d 1079, 1082 (11th Cir. 1996)). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. *Edwards v. Sullivan,* 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan,* 932 F.2d 1356, 1358 (11th Cir.

1991).   "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision."   *Foote*, 67 F.3d at 1560; *see also Lowery*, 979 F.2d at 837 (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings).   It is the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses.   *Lacina v. Commissioner*, 2015 WL 1453364, at *2 (11th Cir. 2015) (citing *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971)).

IV.   **Discussion**

A.   *Whether substantial evidence supports the ALJ's determination that Plaintiff's mental impairment of bipolar disorder is non-severe*

Plaintiff argues that both the record and the Social Security regulations support a finding that Plaintiff's bipolar disorder is severe, and it was error for the ALJ to find otherwise.   Doc. 15 at 10-11.   Plaintiff asserts that in making his finding, the ALJ "ignored" the opinions of Plaintiff's treating physician and the two non-examining agency consultants.   *Id.* at 11, Tr. 17-18.   The Commissioner counters that Plaintiff's argument is without merit, as Plaintiff only had a brief period of inpatient treatment, in which it was determined her symptoms were temporary, expectable reactions to stressors, and she had no more than slight impairment in areas of psychological functions.   Doc. 16 at 4, Tr. 272.   Further, subsequent treatment notes from Plaintiff's psychologist and social worker consistently indicated Plaintiff's condition significantly improved, and indicated generally mild findings.   Doc. 16 at 5.

As noted, at the second step in the sequential evaluation process, the ALJ determines whether the claimant has a severe impairment.   20 C.F.R. § 404.1520(a)(4)(ii).   If the ALJ determines a claimant has a severe impairment, as here, the analysis moves to step three.   *See* 20 C.F.R. § 404.1520(a)(4).   A severe impairment is an impairment or combination of impairments that significantly limits a claimant's physical or mental ability to do basic work activities.   20 C.F.R. § 404.1520(c).   "An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).

This circuit holds that the ALJ's finding "of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two."   *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987).   This is because after proceeding beyond step two of the process, the ALJ must consider all of the claimant's impairments taken as a whole when determining whether her impairments qualify as a disability (step three) and whether she can return to her past work (step four) or, if not, whether she can perform other work available in the national economy (step five).   *Id.*, *see* 20 C.F.R. § 404.1.

Here, as discussed, the ALJ found that Plaintiff has severe impairments of hypothyroidism and a hiatal hernia.   Tr. 17.   The ALJ discussed in detail Plaintiff's complaints of bipolar disorder in considering whether the severity of Plaintiff's

mental impairment met or medically equaled Listing 12.04, and specifically considered the relevant mental health and other records.   Tr. 15-18.

The ALJ noted medical records that show Plaintiff was first treated for her mental health when she was involuntarily hospitalized for a 24-hour period on February 18, 2011, after she had gone without sleep for four days and consumed excessive amounts of alcohol.   Tr. 15, 421.   The hospital record reports that Plaintiff "has had a lot of psychiatric issues with depression due to her recent divorce that she is going through."   Tr. 421.   Plaintiff's laboratory tests, which included a CT scan of her head, thyroid profile, chest x-ray and EKG, among others, were normal.   *Id.* After she was stabilized on medications and prescribed Klonopin to help her sleep, and advised to avoid taking any Ambien, she was discharged the following day and referred for psychiatric treatment.   Tr. 419.   On discharge, Plaintiff was diagnosed with altered mental status "resolved," and she was cleared by neurology for discharge. *Id.*

Plaintiff was admitted to the Senior Behavioral Center on March 9, 2011, where she was under the care of psychiatrist Dr. Ivan Mazzorana.   Tr. 311.   On admission to the center, Dr. Mazzorana indicated that Plaintiff had become gradually depressed and dysfunctional because of her divorce about a year earlier.   *Id.*   She had been prescribed medications, Pristiq and Effexor, by her primary care physician, Dr. Pritt, to which Dr. Mazzorana attributed Plaintiff becoming agitated to the point of psychotic and disorganized behavior.   *Id.*   Instead, Dr. Mazzorana prescribed her Depakote and Zyprexa, to which he noted Plaintiff immediately responded favorably

in that she began to organize her thoughts and showed a "robust response to treatments." *Id.* Upon her discharge on March 22, 2011, Plaintiff was assessed with bipolar disorder, mixed stated, *resolved*, with a GAF score of 75. *Id.* The ALJ observed that the GAF score is "indicative of no more than a slight impairment in social, occupational, or school functioning." Tr. 15 (citing *DSM-IV, Diagnostic & Statistical Manual for Mental Disorders*).

After her discharge from the behavioral center, Plaintiff continued to follow up with Dr. Mazzorana and also was seen by his mental health counselor, Patricia Coccoma, the latter beginning on April 7, 2011.[4] Tr. 307-308. As noted by the ALJ, notes from Plaintiff's sessions with Dr. Coccoma and Dr. Mazzorana's treatment notes consistently indicated that Plaintiff's mood was stable; her affect for the most part appropriate; she denied suicidal ideation, delusions or hallucinations; and she was cognitively intact. Tr. 16, 306, 311, 333-58. By April 28, 2011, although Plaintiff's affect was reported as "frustrated," Plaintiff told Dr. Coccoma that she recognized how her mental health had improved given her brief hospitalization the prior month. Tr. 356. She began volunteering at Hope House and related she was ready to return to work in June 2011. Tr. 16, 353, 356. In addition to her volunteer work, Plaintiff began working part-time in June 2011. Tr. 353. From then until early January 2012, she passed the CNA (Certified Nursing Assistant) exam course, started working as a CNA then quit, stating she did not like the job but reported

---

[4] There are other records of visits with Dr. Coccoma continuing in 2011, 2012 and early 2013, although some of the specific dates are difficult to read. *See, e.g.*, Tr. 333-58.

doing well on her medications.   Tr. 341-49.   By February 2012, Plaintiff was employed as a pharmacy technician.   Tr. 340.   She was working full time in May and June 2012, her social worker noting in May that Plaintiff was "managing well;" but by July and August Plaintiff stated she was frustrated with her job and the salary and was exploring other job options.   Tr. 334-35.   Most of Plaintiff's discussions in her therapy sessions in that time period centered on her relationship with her boyfriend, and in January 2013 she reported she was ending the relationship and was in a tearful mood.   Tr. 333.   At that time, however, Dr. Coccoma reported that Plaintiff's mental status remained unchanged, there were no perceptual disturbances or focal deficits, and Plaintiff was cognitively intact.   Tr. 333-40.   Plaintiff continued to discuss her relationship issues with Dr. Coccoma from February 7, 2013 through April 10, 2013, and reported assisting her elderly mother more frequently.   Tr. 405-08.   Plaintiff's mood continued to be reported as stable and her mental status unchanged.   *Id.*   All this was discussed by the ALJ.   Tr. 16.

After the ALJ specifically considered the relevant mental health records on file, he then applied the evidence to the four broad functional areas, typically known as "paragraph B" criteria, discussed in more detail later in this opinion.   Tr. 17-18. The undersigned has reviewed the record as a whole and determined that the ALJ's decision at step two is supported by substantial evidence.   Moreover, even if the ALJ committed an error at step two, it is a harmless error, because the ALJ complied with the sequential evaluation process and proceeded to step three.   *Jamison*, 814 F.2d at 588.

      B.    *Whether the ALJ properly weighed the medical opinions in determining Plaintiff's RFC*

Plaintiff next argues that there are three physicians' opinions in the record that "establish" that Plaintiff has significant limitations of functioning due to bipolar disorder, yet the ALJ "rejected every portion of every physician's opinion that supports a finding of disability and instead relied on his own lay evaluation of the evidence." Doc. 15 at 13. Plaintiff cites to medical records of Dr. Mazzorana and Dr. Coccoma and Plaintiff's daily activities to support her argument. Doc. 15 at 16. For example, Plaintiff points to records that report blunted affect (Tr. 270), labile mood (Tr. 270), hypomanic mood (Tr. 307), depressed mood (Tr. 306, 334, 337, 338, 340, 360, 407), frustrated affect (Tr. 334, 337, 338, 356), racing thoughts (Tr. 352) and tearful affect (Tr. 360). *Id.* Plaintiff also states that treatment notes of her primary care physician, Dr. Pritt, revealed imbalanced mood, crying spells, difficulty sleeping and ongoing frustration (Tr. 261, 263, 267). *Id.* In addition, Plaintiff argues that the ALJ erred by failing to evaluate whether Mr. Mazzorana's opinion was entitled to controlling weight. *Id.* at 17.

The Commissioner responds that the ALJ properly weighed the medical opinions of treating psychiatrist, Dr. Mazzorana, and the two state agency psychologists. Doc. 16 at 6. After careful review of the medical and other records, Court agrees that substantial evidence supports the weight the ALJ accorded to the medical opinions.

First, with respect to the records cited by Plaintiff and set forth above, Plaintiff appears to be selectively citing information in these records to support her claim,

excluding that which does not – coincidentally, precisely the actions she asserts the ALJ took in his evaluation.   *See* Doc. 15 at 16.   For example, she cites to Dr. Mazzorana's treatment record from March 10, 2011, the day after she was admitted to the behavioral center for treatment, to indicate that she had "blunted affect" and a "labile mood."   Tr. 270.   As noted above, a short time later his records indicated that Plaintiff "immediately responded favorably" to a change in her medications.   Tr. 311.   Records from Dr. Coccoma from February 2012 through March 2013, cited by Plaintiff to report Plaintiff's frustrated and tearful affect and depressed mood also show that Plaintiff's bipolar disorder was stable, and most of her conversations concerned ending her relationship with her boyfriend.   *See* Tr. 334, 337-38, 340, 360, 407.   She also was volunteering during that time period and working.   *See id.*   The records from Dr. Pritt cited by Plaintiff (Tr. 261-63) pre-date her treatment by Dr. Mazzorana in March 2011, when Dr. Mazzorana removed Plaintiff from the Pristiq prescribed by Dr. Pritt (Doc. 262) because he found it agitated her, and replaced it with Depakote and Zyprexa, to which he noted Plaintiff showed a "robust response." Tr. 311.

In addition to the mental health treatment records of Dr. Mazzorana and Dr. Coccoma, on May 29, 2013, Dr. Mazzorana completed a form entitled "Questionnaire as to Mental Residual Functional Capacity," in which he checked off boxes indicating that Plaintiff had marked and sometimes extreme limitations in social functioning and sustained concentration and persistence and marked limitations in adaptation. Tr. 432-33.   Dr. Mazzorana checked "yes" to the question, "Is the claimant's condition

likely to deteriorate if he/she is placed under stress, particularly that of a job?" and further explained that "any stress is detrimental to her depression/anxiety." Tr. 435. The ALJ discussed this evaluation and accorded the opinion little weight, noting it is not well supported by the clinical objective findings and is "wholly inconsistent" with Plaintiff's activities of daily living. Tr. 16-17.

The Court finds that substantial evidence supports the ALJ's opinion concerning the weight the ALJ afforded to Dr. Mazzorana's opinion, based on the medical treatment records discussed above and Plaintiff's activities of daily living, discussed in more detail by the ALJ in his decision and later in this opinion. Tr. 17, 20. Likewise, the Court finds the ALJ properly gave only some weight to the state agency consultative psychologists, Kevin Ragsdale, Ph.D., and Steven Wise, Psy.D. Tr. 20, 312-25, 330. These physicians concluded on May 8, 2011 and September 1, 2011, respectively, that Plaintiff had moderate limitation in social functioning and concentration, persistence or pace. *Id.* Instead, the ALJ found that the medical evidence of record, specifically the treatment records of Dr. Mazzorana and Plaintiff's activities of daily living, supported a finding of only mild limitation in these areas. Tr. 20.

Here, the ALJ considered Plaintiff's testimony, her daily activities, her medical history, and medical source opinions with respect to her alleged mental impairments. Tr. 15-20. Under the regulations, opinions of treating sources usually are given more weight because treating physicians are the most likely to be able to offer detailed opinions of the claimant's impairments as they progressed over time and

"may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations . . . ." 20 C.F.R. § 404.1527(c)(2). Medical source opinions may be discounted, however, when the opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if the opinion is inconsistent with the record as a whole. SSR 96-2p; *Crawford*, 363 F.3d at 1159-60. Accordingly, "[a]n ALJ must give a treating physician's opinion substantial weight, unless good cause is shown." *Castle v. Colvin*, 557 F. App'x 849, 854 (11th Cir. 2014) (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Sabo v. Chater*, 955 F. Supp. 1456, 1462 (M.D. Fla. 1996). "Good cause exists when the '(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'" *Winschel,* 631 F.3d at 1179 (quoting *Phillips*, 357 F.3d at 1241).

In discussing Dr. Mazzorana's May 29, 2013 medical source statement, the ALJ gave it "little weight" and did not accept it because he found the clinical objective findings and Plaintiff's activities of daily living do not support it. Tr. 17. The ALJ further articulated his reasoning as follows:

> Throughout the period of treatment, Dr. Mazzorana's and those of the mental health counselor, [Dr.] Coccoma, document the claimant's mental status had remained "stable" and basically unchanged: her mood and affect had been appropriate, she had denied suicidal ideation, delusions or hallucinations, her speech had been normal rate and rhythm, insight and judgment were appropriate[] and most importantly, she had remained cognitively intact. Upon discharge from the Senior Center in March 2011, Dr. Mazzorana had indicated the claimant's

overall level of global functioning was indicative of no more than a slight impairment in social, occupational, or school functioning. Indeed, the claimant has reported that she had returned to school and had obtained her CNA license and certification. After she related she did not [like] working at this position, she was hired as a pharmacy technician. She worked at this position for at least a five-month period before she indicated she wanted a better position where she was paid more money. Her only apparent emotional difficulties re[v]olved around issues with her recent divorce, her current boyfriend and family dynamics.  She even reported that she was "having fun". Besides returning to work, she also reported she was helping her Mother more. (Ex. 2F, 7F, 10F)  Dr. Mazzorana's opinion is also inconsistent with the claimant's self-report of her activities of daily living. She had provided on May 14, 2011 (after her hospital discharge) that she lives alone, has no problem with her personal care, is able to prepare meals, maintain her residence, and do her laundry. She provided she leaves the home four to five times a day, by either walking, driving, riding in a car, or bicycling. She indicated she shops for food and clothes and has no difficulty handling money. She watches TV, reads and swim[s]. She goes to the pool almost every day and socializes with her neighbors. She has dinner and watches movies with others at least once a week. She attends church twice a week and a support group once a week. (Ex. 3E)

*Id.* The Court finds that the ALJ adequately articulated specific justifications for discounting Dr. Mazzorana's opinion, and the record reflects good cause for doing so. *See e.g.*, *Crawford*, 363 F.3d 1155; *Phillips*, 357 F.3d at 1241. Moreover, form questionnaires or so-called "checklist" opinions such as that completed by Dr. Mazzorana generally are disfavored.  *See Foster v. Astrue*, 410 F. App'x 831, 833 (5th Cir. 2011) (physician's use of "questionnaire" format typifies "brief or conclusory" testimony); *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993)  ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best."); *Hammersley v. Astrue*, No. 5:08-cv-245-Oc-10GRJ, 2009 WL 3053707, *6 (M.D. Fla. Sept. 18, 2009) ("[C]ourts have found that check-off forms . . . have limited probative value because they are conclusory and provide little narrative

or insight into the reasons behind the conclusions."). Furthermore, to the extent Plaintiff points to treatment notes that may contradict some portions of the evidence relied upon by the ALJ, "when there is credible evidence on both sides of an issue it is the Secretary, acting through the ALJ, and not the court, who is charged with the duty to weigh the evidence and to determine the case accordingly." *Powers v. Heckler*, 738 F.2d 1151, 1152 (11th Cir. 1984) (*Richardson v. Perales*, 402 U.S. 389, 389-409 (1971)).

Plaintiff has failed to provide any additional evidence to support her position that her mental limitations are more severe and affect her ability to perform basic work. "The claimant is responsible for providing medical evidence demonstrating an impairment and how severe the impairment is during the relevant time period." *Castle*, 557 F. App'x at 852 (citing 20 C.F.R. § 404.1512(c)); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) ("[T]he claimant bears the burden of proving he is disabled, and, consequently, he is responsible for producing evidence in support of his claim.").

Accordingly, the Court finds that based on the evidence of record, the ALJ did not substitute his opinion for those of the medical experts, and he properly discounted the opinions of Dr. Mazzorana, Dr. Ragsdale and Dr. Wise. Moreover, the ALJ clearly articulated his reasons for the weight given to the physicians' opinions. The decision of the ALJ is supported by substantial evidence.

C.    *Whether the ALJ was required to obtain testimony of a VE*

The ALJ determined that Plaintiff had the residual functional capacity to perform the full range of medium work and found that Plaintiff is able to perform her past relevant work as an x-ray technician.   Tr. 20.   Alternatively, using the grids, he found that considering Plaintiff's age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.   Tr. 21.

Plaintiff argues that the ALJ erred in utilizing the grids, because she has moderate limitations in social functioning and maintaining concentration, persistence and pace, which affected her ability to perform work-related activities. Doc. 15 at 19.   Therefore, Plaintiff contends that because certain non-exertional limitations[5] exist, a vocational expert was necessary to support the ALJ's conclusion that those nonexertional impairments do not limit basic work skills.   *Id.* at 19-20. Because the ALJ found substantial evidence to support a finding that Plaintiff's mental impairments cause no more than minimal limitation in Plaintiff's ability to perform basic mental work activities and that Plaintiff is capable of performing her past relevant work, or in the alternative, work at the full range of medium exertional level, the Court concludes that the ALJ properly relied upon the grids in determining that Plaintiff was not disabled.   Tr. 18-21.

---

[5] "In the disability programs, a nonexertional impairment is one which is medically determinable and causes a nonexertional limitation of function or an environmental restriction.   Nonexertional impairments may or may not significantly narrow the range of work a person can do."   SSR 83-14, 1983 WL 31254 at *1 (S.S.A. 1983).   Nonexertional limitations affect a claimant's ability to meet the demands of jobs, other than strength demands.   20 C.F.R. § 404.1569a(c).

An ALJ is not required to consult a VE in determining whether a claimant can perform her past relevant work. *See Lucas v. Sullivan*, 918 F.2d 1567, 1573 n.2 (11th Cir. 1990); *Schnoor v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987) ("[B]ecause the ALJ concluded that she is capable of performing her past relevant work, testimony from a vocational expert was not necessary."); *Hernandez v. Comm'r of Soc. Sec.*, 433 F. App'x 821, 823 (11th Cir. 2011) ("Generally, vocational expert testimony is not necessary to determine whether a claimant can perform his past relevant work."). As noted, the ALJ found that Plaintiff could perform her past relevant work as an x-ray technician as actually performed and as generally performed in the national economy. Tr. 20-21). Because the ALJ was not required to consult a VE, his failure to do so could not have been error.

In rendering his decision, the ALJ considered all medical evidence of record, which he discussed at length in his disability determination opinion. He properly determined that Plaintiff retained the ability to perform her past relevant work and is therefore not disabled. In doing so, the ALJ applied the correct legal standards and the overall record in this case reveals that substantial evidence supports his decision.

Moreover, as asserted by the Commissioner, the ALJ properly relied on Plaintiff's description of her former work and the DOT to determine the demands of Plaintiff's past relevant work. Tr. 20-21, 33-34. Doc. 16 at 12, citing 20 C.F.R. § 404.1560(b)(2); SSR 82-61, 82-62 ; U.S. Dep't of Labor, DOT § 209.562-010, 1991 WL 671792 (4th ed. 1991). The DOT provides substantial evidence to support the ALJ's

finding that Plaintiff's past relevant work as actually and generally performed did not involve demands in excess of her RFC.   Tr. 20-21.   It was Plaintiff's burden to prove that her limitations prevented her from performing her past relevant work, and she failed to do so.   *Doughty*, 245 F.3d at 1278 n.2; *Barnes*, 932 F.2d at 1359; *Jackson v. Bowen*, 801 F.2d 1291, 1293-94 (11th Cir. 1986).   Accordingly, the Court finds that substantial evidence supports the ALJ's conclusion that Plaintiff could perform her past relevant work and was not disabled.

Alternatively, as noted, the ALJ found that Plaintiff could perform a full range of medium work.   Tr. 18.   In a disability determination, once a claimant proves that she can no longer perform her past relevant work, "the burden shifts to the Commissioner to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform."   *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999).   One way for the Commissioner to carry this burden is through an application of the Medical-Vocational Guidelines, also known as the grids.   *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2.   When a claimant cannot perform substantially all of the exertional demands of a given work level and/or has non-exertional limitations, the grids are used as a framework for decision making unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations.   *See Wolfe v. Chater*, 86 F.3d 1072, 1077 (11th Cir. 1996).

"'[E]xclusive reliance on the grids is not appropriate *either* when [the] claimant is unable to perform a full range of work at a given residual functional level or when

a claimant has non-exertional impairments that significantly limit basic work skills.'" *Phillips,* 357 F.3d at 1242, quoting *Francis v. Heckler*, 749 F.2d 1562, 1566 (11th Cir. 1985) (emphasis added).   It is only when either condition exists that the ALJ must consult a vocational expert.   *Id.*   "The first condition that requires the ALJ to consult a vocational expert is when the claimant's *exertional* limitations prevent the claimant from performing a full range of employment."   *Id.* (emphases in original). The Eleventh Circuit has interpreted a "full range of employment" as being able to do "unlimited" types of work at the given exertional level.   *Id.*, quoting *Ferguson v. Schweiker*, 641 F.2d 243, 248 (5th Cir. 1981).   The second condition that requires consultation of a vocational expert is when the claimant's nonexertional impairments significantly limit basic work skills.   *Phillips*, 357 F.3d at 1243 (internal citations omitted).   The Eleventh Circuit has interpreted "significantly limit basic work skills" as limitations that prohibit a claimant from performing "a *wide* range" of work at a given work level.   *Id.*, citing *Foote*, 67 F.3d at 1559 (emphasis in original).   The ALJ must determine "whether the nonexertional limitations are severe enough to preclude a wide range of employment at the given work capacity level." *Foote*, 67 F.3d at 1559 (internal quotation marks and citations omitted).

"It is only when the claimant can clearly do unlimited types of light work that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy."   *Allen v. Sullivan*, 880 F.2d 1200, 1202 (11th Cir. 1989); *see also Phillips*, 357 F.3d at 1242.   Accordingly, "[w]hen a claimant cannot perform a full range of work at a given level of exertion or has non-

exertional impairments that significantly limit basic work skills, the preferred method of demonstrating that a claimant can perform other jobs is through the testimony of a VE." *Smith v. Soc. Sec. Admin.*, 272 F. App'x 789, 799-800 (11th Cir. 2008)(citing *Jones*, 190 F.3d at 1229). If a claimant's non-exertional limitations do not significantly limit his basic work skills at the sedentary work level, then the ALJ may rely on the grids to determine if the claimant is disabled. *Phillips*, 357 F.3d at 1243. Further, if non-exertional impairments are minor or are found to be not credible, however, exclusive reliance on the grids is appropriate. *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 826 (11th Cir. 2010).

Here, the ALJ found that Plaintiff had the residual functional capacity to perform a full range of work at the medium exertional level. Tr. 21. As noted, the ALJ found that Plaintiff's alleged bipolar disorder to be nonsevere, and further considered whether her mental impairment met Listing 12.04. Tr. 14-18. In making this determination, the ALJ considered the four functional areas set out in the disability regulations for evaluating mental disorders and found that with regard to the first functional area of activities of daily living, Plaintiff has mild restriction, noting she reported she is able to care for her personal needs, prepare simple meals, does household chores and laundry. Tr. 17. She also drives, walks, rides her bicycle and spends time with her boyfriend, friends, family and neighbors. *Id.* She leaves home to shop for food and clothing and to attend movies, go to dinner with friends and attend church and support groups, the latter two on a weekly basis. *Id.*

Plaintiff also returned to work for at least five to six months during her alleged period of disability, and completed CNA training and obtained her certification.   *Id.*

The ALJ further found Plaintiff has only mild difficulties in social functioning. *Id.*   He noted both Dr. Mazzorana and Dr. Coccoma reported Plaintiff was stable, her mood and affect for the most part appropriate, her speech normal and she denied suicidal ideation, delusions or hallucinations.   *Id.*   They reported no perceptual disturbances.   *Id.*   The ALJ noted Plaintiff was involved in a relationship with a boyfriend, goes to the pool daily and socializes with her neighbors, in addition to going to movies and dinner with friends.   *Id.*   She has contact with her children and helps care for her elderly mother, among other activities noted in the opinion.   Tr. 17-18.

With respect to concentration, persistence or pace, the ALJ found Plaintiff had "mild difficulties," noting her completion of two years of college, her past relevant work as a radiology technician and her completion of her CNA certification.   Tr. 18. He further cited to Plaintiff's ability to handle her financial affairs, maintain her residence, drive, leave the home alone and shop.   *Id.*   The ALJ noted both Dr. Mazzorana and Dr. Coccoma consistently had reported Plaintiff remained cognitively intact during the alleged period of disability, and Plaintiff returned to work as a pharmacy technician and CNA during this time.   *Id.*   As to the final area of episodes of decompensation, the ALJ found that Plaintiff had experienced one or two episodes of decompensation, each of extended duration; but further noted that upon discharge, she was assessed with only a slight impairment in social and occupational functioning.   *Id.*

Because Plaintiff could perform a full range of medium work, and the ALJ found Plaintiff's assertion of non-exertional impairment to be not credible (Tr. 19), he was entitled to rely upon the grids to determine that there were a significant number of jobs in the national economy that Plaintiff could perform. *Heatly*, 383 F. App'x at 826; *Clifton v. Astrue*, 298 F. App'x 855, 856 (11th Cir. 2008) (ALJ properly relied on grids where claimant's mental limitations did not preclude full range of light work); *Perry v. Astrue*, 280 F. App'x 887, 894, 896 (11th Cir. 2008) (VE testimony was not required where ALJ determined that plaintiff did not have nonexertional impairments that significantly limited his ability work, and substantial evidence supported the ALJ's decision); *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011) (ALJ's determination that plaintiffs nonexertional impairments did not significantly limit plaintiff's ability to work was supported by substantial evidence, and the ALJ therefore was free to rely on grids rather than VE); *Johnson v. Barnhart*, No. 02-16464, 2003 WL 22595220, at *6 (11th Cir. 2003) (ALJ could rely on grids and was not required to consult VE where the plaintiff's nonexertional limitations did not preclude wide range of sedentary work).   Accordingly, the Court finds that the ALJ properly relied upon the grids in determining that Plaintiff is not disabled.

## V.   Conclusion

Upon review of the record, the undersigned concludes that the ALJ applied the proper legal standards, and his determination that Plaintiff is not disabled is supported by substantial evidence.

ACCORDINGLY, it is hereby

**ORDERED:**

1.      The decision of the Commissioner is **AFFIRMED**.

2.      The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) in favor of the Commissioner, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on this 23rd day of September, 2016.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record